IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TAN GROW INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-1855 (RDA/WBP) |
| ) | |
| UNINCORPORATED ASSOCIATIONS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Tan Grow Inc.'s ("Plaintiff") Motion for a Preliminary Injunction ("Motion"). Dkt. 25. Considering the Motion together with the accompanying exhibits and Memorandum in Support, Dkt. 26, as well as the Memorandum in Support of Plaintiff's previous Motion for Temporary Restraining Order, Dkt. 12, and argument heard during the December 4, 2024 hearing, this Court GRANTS Plaintiff's Motion for the reasons that follow.

I. BACKGROUND

Plaintiff seeks a Preliminary Injunction extending the relief previously granted in this Court's October 31, 2024 Temporary Restraining Order ("TRO"). Dkt. 18. Plaintiff asserts that it brought the instant action "to stop the online sale of infringing goods" (collectively the "Counterfeit Products") that resemble Plaintiff's dog bathtub stations (the "Products") for which Plaintiff owns various Patents-in-Suit, including: (i) U.S. Patent No. 10,543,957 B2 ("the '957 Patent") titled "Foldable Liquid Container with Supporting Frame"; (ii) U.S. Patent No. 10,882,662 B2 ("the '662 Patent") titled "Foldable Liquid Container with Supporting Frame"; and (iii) U.S. Patent No. 11,939,111 B2 ("the '111 Patent") titled "Foldable Container and Foldable

1

Supporting Frame Thereof, and Folding Method" (collectively "the Patents-in-Suit"). Dkt. 26 at 1-2. Plaintiff alleges that Defendants "are importing, promoting, advertising, marketing, distributing, offering for sale, and selling dog bath tub [sic] products through various websites/webstores, namely Amazon.com, Temu.com, and Walmart.com, that infringe the claims of the patents-in-suit." *Id.* at 2.

To confront "significant patent and trademark counterfeiting problems in the United States," Plaintiff has "nearly continuously fought to keep infringing products off the market via enforcement of its intellectual property rights in U.S. courts." Dkt. 12 at 3. Plaintiff sells its Products to consumers through online platforms like Amazon.com and maintains quality control standards for its products. *Id.* at 4. Prior to the flood of the Counterfeit Products into the market, Plaintiff asserts that sales from its Products represented a "significant portion" of its business. *Id.* at 4-5.

Defendants are individuals and companies who allegedly reside in China and have no other assets in this jurisdiction aside from the monies in their webstore accounts. Dkt. 26 at 10. Defendants have "attempt[ed] to avoid liability by going to great lengths to conceal both their identities and the full scope of their counterfeiting operation." *Id.* at 3. Nevertheless, Defendants "employ the user accounts listed in Schedule A to the Verified Complaint (the "Defendant Webstores") . . . to conduct online sales" of the Counterfeit Products. *Id.*

Plaintiff reviewed the offerings from the Defendants on Amazon.com, Temu.com, and Walmart.com and determined that the products were in fact counterfeit based on a visual inspection, the prices at which they were being sold, and because Defendants do not "conduct business with Plaintiff and do not have the right or authority to use the Patents-in-Suit." Dkt. 12

2

at 5. Plaintiff also confirmed that Defendants offered the Counterfeit Products for sale "to residents of the United States and the State of Virginia." *Id.*; Dkt. 1 ¶ 12.

Consequently, on October 21, 2024, Plaintiff brought claims against Defendants in this Court for patent infringement. Dkt. 1 ¶¶ 49-111. The same day that Plaintiff filed its Verified Complaint, it filed *ex parte* Motions for a Temporary Restraining Order and for an Asset Restraining Order, Dkts. 8; 9, along with a Memorandum in Support, Dkt. 12.[1] Plaintiff requested that this Court issue a TRO freezing the assets of Defendants' Amazon.com, Temu.com, and Walmart.com accounts, enjoining the transfer of any monies held in Defendants' accounts. Dkts. 8; 9; 12. The Court heard argument for the motions on October 30, 2024 and Plaintiff set forth its case for infringement and to support the issuance of a TRO.[2] Finding the standards met to issue the requested relief, this Court issued a TRO on October 31, 2024, ordering Amazon.com, Temu.com, and Walmart.com to freeze all accounts associated with Defendants and restraining and enjoining the transfer of any monies held in such accounts until further order of this Court. Dkt. 18. The TRO was to remain in effect for 40 days from the date of the Order and this Court set a Preliminary Injunction Hearing for December 4, 2024. *Id.* On November 21, 2024, summonses were issued as to Defendants – The Unincorporated Associations Identified in Schedule A. Dkt. 22. On November 25, 2024, Plaintiff filed the instant Motion for a Preliminary Injunction to extend the relief granted in the October 31, 2024 TRO. Dkt. 25. On December 2, 2024, Plaintiff filed three Notices of Voluntary Dismissal and dismissed its claims against

---

[1] Plaintiff also filed *ex parte* Motions for Expedited Discovery and Service of Process by Email, Dkts. 10; 11, which were granted on November 5, 2024. Dkts. 19; 20.

[2] Plaintiff also brought one of the allegedly Counterfeit Products to the hearing on October 30, 2024.

Defendant 1 LIYYOO, Defendant 2 LTMATE, and Defendant 9 GOODSCIOUS. Dkts. 27; 28; 29. On December 4, 2024, Plaintiff filed three additional Notices of Voluntary Dismissal, dismissing its claims against Defendant 10 AUDOC, Defendant 12 DODAER, and Defendant 14 FLARUZIY. Dkts. 32; 33; 34.

On December 4, 2024, Plaintiff filed a Notice of Service and Status Report, detailing which of the Defendants have been served. Dkt. 35. Of the thirty Defendants, twenty-five were served prior to the December 4, 2024 hearing on Plaintiff's Motion for Preliminary Injunction. *Id.* at 2. Plaintiff could not serve five Defendants because Amazon.com did not provide contact information for them. *Id.* at 1-2. Of the twenty-five who have been served, the claims against six Defendants were resolved and dismissed, two Defendants signed settlement agreements, and an additional six Defendants are in active ongoing discussions with Plaintiff. *Id.* at 2. The rest were non-responsive. *Id.* Thus, Plaintiff certifies that Defendants were provided with notice of the Motion for Preliminary Injunction via e-mail, Dkt. 26 at 16, however, none appeared for the December 4, 2024 hearing on the Motion.

## II. STANDARD OF REVIEW

A motion for a preliminary injunction is subject to the requirements of Federal Rule of Civil Procedure 65. "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Perry v. Judd*, 471 Fed. App'x 219, 223 (4th Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "[G]ranting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way." *Hughes Network Sys. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). A grant of preliminary injunctive relief requires the movant to establish the following four factors: (1) the likelihood of irreparable

harm to the plaintiff if preliminary relief is denied; (2) the likelihood of harm to the defendants if the preliminary injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Winter*, 555 U.S. at 20.

### III. ANALYSIS

A review of the factors set forth in *Winter* establishes that Plaintiff has satisfied its burden to obtain a preliminary injunction. The Court analyses each of the necessary elements below.

#### A. Jurisdiction

As a threshold matter, the Court finds that personal jurisdiction is appropriate over Defendants because they purposefully targeted their business activities towards consumers in Virginia. Dkt. 1 ¶ 12. This action stems from the Defendants selling Counterfeit Products online and shipping them to buyers in the United States, including residents of Virginia. Dkt. 1 ¶ 5, 12. The Court also concludes that it has subject-matter jurisdiction over the instant action because the claims arise under federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

#### B. Preliminary Injunction

Having reviewed the papers and exhibits filed in support of Plaintiff's Motion, the Court hereby makes the following findings.

##### 1. Likelihood of Irreparable Harm

Defendants offer counterfeit copies of Plaintiff's Products, which irreparably harms Plaintiff by damaging Plaintiff's reputation, causing loss of future sales, and resulting in loss of exclusivity. Dkt. 12 at 16. Additionally, without the requested relief, Defendants may transfer funds from Amazon.com, Temu.com, or Walmart.com to a provider beyond this Court's

jurisdictional reach, thereby depriving Plaintiff of the ability to obtain monetary relief for its injuries.

Furthermore, where the moving party clearly establishes a likelihood of success on the merits in a patent case, the prospect of irreparable harm is often presumed. *See CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 893 F. Supp. 508 (D. Md. 1995) ("[T]o the extent that the patentee 'clearly establishes' or makes a 'strong showing' of likelihood of success on the merits (including continuing infringement), it is entitled to a presumption of irreparable harm." (citations omitted)). As discussed *infra*, there is a strong likelihood that Plaintiff will succeed on the merits of its claims. This factor therefore favors granting the preliminary injunction.

### 2. Harm to Defendants

Defendants are unlikely to suffer any cognizable harm from the preliminary injunction, as they will merely be prevented from profiting from past counterfeiting and infringement and from moving their funds beyond the reach of this Court. *See Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008) (holding that any harm a defendant would suffer by being prevented from deliberately infringing a plaintiff's trademark does not alter the balance of hardship analysis). This factor thus weighs in favor of granting the preliminary injunction.

### 3. Likelihood of Success on the Merits

Plaintiff is similarly likely to succeed on the merits of its patent infringement claims. To prevail on a claim for patent infringement, a plaintiff must establish that (1) it will likely prove that the defendants infringed one or more claims of the patents-in-suit and (2) that at least one of those same allegedly infringed claims will also likely withstand validity challenges presented by the defendants. *AstraZeneca LP v. Apotex, Inc.,* 633 F.3d 1042, 1050 (Fed. Cir. 2010).

Here, Plaintiff is the exclusive owner of three Patents-in-suit that protect its foldable dog bathtub and wash station Products.  Dkt. 1 ¶¶ 18-26; *see id.*, Exs. A-C (proof of Patents-in-suit).  Plaintiffs further alleges that Defendants "directly infringed, and continue to infringe" one or more of the Patents-in-suit by "making, using, testing, selling, offering for sale and/or importing in the United States" counterfeit versions of the Products.  Dkt. 12 at 12; Dkt. 1 ¶ 28.  Plaintiff has also attached to its Complaint photos of the Counterfeit Products that demonstrate their similarity to Plaintiff's Products.  Dkt 1, Exs. D-J.  Each of the Counterfeit Products include "all of the claimed elements of at least one claim of at least one of the patents-in-suit."  Dkt. 12 at 15.; Dkt. 1 ¶ 32.  Further, upon review of the record currently before it, the Court presently cannot identify validity challenges that the infringed claims will not be able to withstand.  Plaintiff is therefore likely to succeed on the merits of its patent infringement claim.

### 4. Public Interest

Finally, a preliminary injunction that freezes Defendants' assets serves the public interest rather than harms it.  In patent cases, "the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief."  *EyeTicket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527, 550 (E.D. Va. 2001) (citing *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1458 (Fed. Cir. 1988)).  The Court cannot identify any critical public interest that would be adversely affected by a preliminary injunction continuing to freeze Defendants' assets within their Amazon.com, Temu.com, and Walmart.com accounts.  Moreover, the Fourth Circuit has recognized a "public interest in making [] infringing misconduct unprofitable."  *Synergistic Int 7, LLC v. Korman*, 470 F.3d 162,176 (4th Cir. 2006).  Accordingly, this factor therefore also counsels in favor of granting the preliminary injunction.

C. Security Bond

In addition, courts "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A district court has discretion to set the bond amount where it deems proper, but "it is not free to disregard the bond requirement altogether." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). The previously posted bond of $50,000 shall therefore remain posted.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for Preliminary Injunction (Dkt. 25) is GRANTED; and it is

FURTHER ORDERED that Amazon.com, Temu.com, and Walmart.com shall continue to freeze all accounts associated with Defendants identified in Schedule A to the Verified Complaint (and attached to this Memorandum Opinion and Order) and restrain and enjoin the transfer of any monies held in such accounts until further order by this Court; and it is

FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 65(c), the previously posted bond of $50,000 shall remain posted with respect to the preliminary injunction granted herein.

The Clerk is directed to forward a copy of this Order to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
December 4, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge